IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
:
REGINALD CUMMINGS,                              :     CIVIL ACTION
:
             Plaintiff,            :
:
      v.                                              :     No.  15-4504
:
THE CITY OF CHESTER,                             :
ARTHUR GRENIER, and                              :
JOHN DOE POLICE OFFICERS I-V,         :
:
             Defendants.         :
_____:

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                **JANUARY 26, 2016**

       Presently before this Court is the Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) on Behalf of Defendant, City of Chester ("Chester"), the Response in Opposition by Plaintiff, Reginald Cummings ("Cummings"), and Chester's Reply Brief.  For the reasons set forth below, Chester's Motion is denied

**I.   BACKGROUND**

       The facts alleged in the Complaint are summarized as follows.  On or about January 2, 2014, at approximately 1:30 a.m., Cummings returned to his home at 339 W. 22nd Street in Chester, Pennsylvania, to discover that his 19 year old son was having a party.  Compl. ¶ 6.  Cummings had given his son permission to host the party, but he told his son that the party was to be finished no later than 1:00 a.m.  Id. ¶ 7.  Upon seeing that the party was still ongoing at 1:30 a.m., Cummings asked everyone to leave the home, but the party goers refused.  Id. ¶ 8.  Cummings called the police to break up the party.  Id. ¶ 9.

       Shortly after, Chester County police officer Arthur Grenier ("Grenier") and five (5) John

Doe Chester County police officers ("John Doe Defendant Officers") (collectively "Defendant Officers") arrived at Cummings' home. Id. ¶ 10. Grenier began to speak with Cummings' wife, Lakisha, and his son. Id. ¶ 11. While Grenier was speaking with Cummings' family, Cummings asked Grenier to come into the dining room in order to get the kids that still were in his home to depart. Id. ¶ 12. In response, Grenier started yelling at Cummings, telling him to "shut the fuck up." Id. ¶ 13. When Cummings asked Grenier if the officer was addressing him, Grenier again yelled at Cummings to "shut the fuck up." Id. ¶ 14. In response, Cummings told Grenier that he should not be speaking to him in that tone and with that language. Id. ¶ 15. Upon having his choice of language questioned, and without provocation or basis in law, Grenier approached Cummings, grabbed him, and slammed him into the ground, all the while yelling at him that he was under arrest. Id. ¶ 16.

After illegally throwing Cummings to the ground, Grenier handcuffed and arrested Cummings. Id. ¶17. In the process of being thrown to the ground, Cummings struck and injured his right knee. Id. ¶18. To make matters worse, as Cummings complained about his knee, Grenier proceeded to step on that knee as he continued to yell at Cummings while putting handcuffs on him. Id. ¶ 19. Importantly, at no time did Cummings violate any law, or pose any threat to anyone on the premises, including Grenier, or resist the officer in any manner. Id. ¶ 20. Indeed, Cummings complied with every illegal order and action taken by Grenier. Id. ¶ 21. Furthermore, upon information and belief, despite witnessing everything that had transpired, knowing Cummings had done nothing wrong, and having ample opportunity to intervene, John Doe Defendant Officers stood idly while Cummings' rights were violated. Id. ¶ 22.

As a result of the arrest, Cummings was held in jail for nine hours. Id. ¶ 23. He was charged with disorderly conduct, public drunkenness, and resisting arrest. Id. The charges of

resisting arrest and public drunkenness were dismissed.  Id. ¶ 24.  While he was incarcerated, Cummings' right knee continued to swell and cause him substantial pain and discomfort.  Id. ¶ 25.  Despite visible swelling, defendants failed and/or refused to provide any medical treatment.  Id. ¶ 26.

Immediately upon being released, Cummings went to Crozer Chester Medical Center for medical treatment.  Id. ¶ 27.  As a result of Defendants' unlawful actions, Cummings was ultimately diagnosed with a medial meniscus tear and a small anterior cruciate ligament ("ACL") tear.  Id. ¶ 28.  These results were indicated by MRI dated February 22, 2014.  Id.  Further, on April 24, 2014, Cummings underwent arthroscopic debridement of the ACL.  Id. ¶ 29.  The surgery confirmed the tear of the medial meniscus and the existence of an ACL tear. Id.  On June 16, 2014, Cummings underwent a second arthroscopic procedure on his right knee. Id. ¶ 30.  While the surgery provided some initial relief, it has not resolved his continuing pain and limitation.  Id.  Today, Cummings continues to suffer from, *inter alia,* anxiety, fear, and mental harm. Id. ¶ 31.

Subsequent to the unlawful detention and arrest of Cummings, Grenier prepared and caused to be prepared police paperwork intentionally misrepresenting the events that led to the arrest of Cummings.  Id. ¶ 32.  These misrepresentations were intentional, malicious, in bad faith, deliberately indifferent, and recklessly indifferent to Cummings' rights.  Id.  The Complaint alleges that at no time during the incident did Cummings violate the laws of Pennsylvania or any other jurisdiction as described in the paperwork prepared by Grenier. Id. ¶ 33.  As a direct and proximate result of Defendants' actions, Cummings was deprived of rights, privileges and immunities under the Fourth Amendment to the United States Constitution and in particular the right to be free from excessive force.  Id. ¶ 34.

The Defendants' actions violated the clearly established federal constitutional rights of Cummings to freedom from excessive force.  Id. ¶ 35.  Cummings further alleges that Defendant Police Officers acted with rampant disregard for policies and procedures in place by Chester, and it took no corrective action.  See Count III.  As a result, Cummings suffered repeated violations of his constitutional rights as Chester turned a blind eye to the wrongdoings of Defendant Police Officers.  Id.

On August 11, 2015, Cummings filed a Complaint alleging: Count I – 42 U.S.C. 1983 (Excessive Force) against Grenier; Count II – 42 U.S.C. 1983 (Bystander Liability) against Chester and John Does Police Officers; and Count III – 42 U.S.C. 1983 against Chester.  Compl. ¶¶ 36-55.

## II.  STANDARD OF LAW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted.  Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)).  In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff.  Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The Supreme Court set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the

4

progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Phila., 415 F. App'x. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from

conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

## III. DISCUSSION

Chester moves for dismissal of all the claims against it arguing that Cummings has failed to allege liability under Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).[1] "A municipality cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is liable under § 1983." Id. at 694.

Depending on whether a Section 1983 claim is premised on municipal policy or custom, there is a "two-path track" to municipal liability,

> Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law.

Mulholland v. Cnty. of Berks, 706 F.3d 227, 237 (3d Cir. 2013) (citations and internal quotation marks omitted). "In either instance, the Plaintiffs have the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007) (citation omitted). A plaintiff does not need to specifically identify the responsible decisionmaker because practices that are considered

---

[1] Chester argues that the claims asserted against Grenier in his official capacity are redundant of a claim against it and should be dismissed. (Def.'s Mot. to Dismiss at 12; Def.'s Reply Br at 4.) Cummings argues that he is only asserting his claims against Grenier in his individual capacity, not his official capacity. (Pl.'s Response in Opp'n at 16.)

custom or policy under Monell are ascribable to municipal decisionmakers. Bynum v. Trs. of Univ. of Penn., - F. Supp. 3d - , No. 15-1466, 2015 WL 4480842, at *7 (E.D. Pa. July 23, 2015) (citing Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)).  "Thus, even if a custom or policy 'has not been formally approved by an appropriate decisionmaker,' it 'may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.'"  Id. (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

"To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."  McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) (citing Phillips v. Cnty. of Alleg., 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.")).  "Mere assertion of an entitlement to relief, without some factual 'showing,' is insufficient under Fed. R. Civ. P. 8(a)(2)."  Id. (citing Phillips, 515 F.3d at 232).

Examining the eight paragraphs of the Complaint explicitly addressing Cummings' allegations against Chester, and the factual allegations in the Complaint as a whole, we find that Cummings has sufficiently alleged a policy, custom or practice on the part of Chester that caused civil rights violations to be made against him.  Cummings alleges that Chester has a policy, custom or practice of covering-up and avoiding detection of acts of police abuse or improper use of police authority by charging victims of police abuse with criminal offenses and, thereby, attempting to prevent access of the victim to the courts and due process.  Compl. ¶ 48. Cummings further alleges that, for many years, Chester adopted and maintained a policy, custom or practice allowing for the false arrest, false imprisonment and malicious prosecution of

suspects, which is the same type of treatment Cummings was subjected to by Defendants. Id. ¶ 52. Cummings does not allege that only Grenier and the John Doe Defendant Officers violated his constitutional rights under the Fourth and Fourteenth Amendments, but, rather, that an entire police department played a role in the alleged constitutional violations. As a result of the alleged policies, customs or practices of Chester, Cummings asserts that the John Doe Defendant Officers did not act to stop or curtail Grenier's actions because they believed, along with Grenier and Chester, that their actions would not be properly monitored by supervisory officers and the misconduct would not be investigated or sanctioned, but would be tolerated and condoned. Id. ¶ 54.

Additionally, Cummings has stated a claim that Chester violated his constitutional rights under the Fourth and Fourteenth Amendments by failing to train, supervise or discipline its officers. A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons.'" Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the " identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury." Id. at 325 (citations omitted); see also Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) ( "Additionally, the identified deficiency in a City's training program must be closely related to the ultimate injury; or in other words, the deficiency in training [must have] actually caused the constitutional violation."). A failure to train claim may be premised on a single incident. Thomas, 749 F.3d at 223 (internal citations omitted). In such a situation, a plaintiff must allege facts showing that the need to train officers

8

must "'be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights.'" Id. (quoting City of Canton, 489 U.S. at 390 n.10).

The facts, as alleged, can support a failure-to-train claim under Monell. Cummings has sufficiently articulated facts supporting a claim that Chester's failure to implement more rigorous training and oversight amounts to deliberate indifference, which caused his constitutional injuries. He identified a specific unconstitutional custom or policy, and alleged facts to support the assertion that Chester failed to properly train, supervise, or discipline the Defendant Officers. Cummings has alleged more than mere "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action" with respect to the Monell claim against Chester. Iqbal, 556 U.S. at 678. Therefore, dismissal of Cummings' Monell claims against Chester is not warranted at this moment; however, whether Cummings will be able to produce evidence supporting liability will be resolved at a later stage of this litigation. Consequently, Chester's Motion to Dismiss is denied.

An appropriate Order follows.